UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| JOHN T. MCMAHAN, | Case No. 18-14064 |
| Debtor | Honorable Janet S. Baer |
| THOMAS E. SPRINGER, solely in his capacity as the Chapter 7 trustee of the Debtor, | |
| Plaintiff, | |
| v. | Adv. No. 20-00167 |
| TRINITY GREEN – COLORADO, LLC | |
| Defendant. | |

**MOTION FOR LEAVE TO APPEAR, TO VACATE ALL SUBSTANTIVE RULINGS IN THE ADVERSARIAL CASE, FOR DISMISSAL ON LIMITATIONS GROUNDS AND FOR THE ENTRY OF OTHER RELIEF**

NOW COMES the Defendant, Trinity Green – Colorado, LLC, by and through their attorney, Robert J. Shelist of the Law Offices of Robert J. Shelist, P.C. and hereby move this Honorable Court for leave for counsel to file his appearance instanter, to vacate all substantive rulings entered in this adversarial case, pursuant to FRCP 60(b) and Rule 9024, to dismiss the case on statute of limitations grounds and for other relief, detailed herein.[1] In furtherance of this motion, Defendants state as follows:

1. Counsel was recently retained to represent the Defendants in the three adversarial cases

---

[1] Counsel for the Defendants has not yet appeared in this case and is seeking leave to do so in this motion. Counsel has not yet had the opportunity to confer with Plaintiff's counsel about their position relative to the relief requested herein. However, it is safe to assume that they will oppose this motion in its entirety.

filed by Thomas E. Springer, the Chapter 7 Trustee of the Debtor, John McMahan.

2. Initially, leave is hereby sought for counsel to file his appearance in this adversarial case, instanter.

3. Lynn McMahan ("Mrs. McMahan") is the manager and member of the Defendant, Trinity Green–Colorado, LLC. Lynn is the wife of the debtor, John McMahan ("Dr. McMahan").

4. Unfortunately, Mrs. McMahan has had a myriad of health issues over the past few years that rendered her unavailable to participate in the adversarial litigation in a consistent manner. Those health issues included a 2019 heart attack. That resulted in a one-week stay in the intensive care unit in the hospital and subsequent cardiac rehabilitation at the Scripts Institute in La Jolla, California and Eisenhower Medical Center in Palm Springs, California.

5. Mrs. McMahan then suffered a stroke in 2020 causing a significant short-term disability and requiring yet another arduous rehabilitation period.

6. Further complicating her health, Mrs. McMahan also has suffered from both Addison's and Cushing's diseases.

7. Then, Mrs. McMahan was stricken with COVID in November 2020 causing an extreme illness due to her pre-existing conditions. As a result, she suffered significant long-term disabilities due to very low oxygen levels and extreme exhaustion. These symptoms persisted and lingered for a long time, diagnosed as being long-haul COVID.

8. Mrs. McMahan then suffered a fall in 2022 causing a severe concussion.

9. Mrs. McMahan currently is being treated for another health issue being a serious neurologic condition that could cause permanent vision loss. She is a patient for this condition at the Mayo Clinic in Minnesota. (A copy of a recent letter from Jeffrey Thornton, MD, dated

September 28, 2022, related to this latest health issue is attached hereto as Exhibit A.)

10. Because of the litany of health issues, including long-haul COVID which afflicted her in 2020 lasting well into 2021, Mrs. McMahan's failure to respond to various motions, filings and requests to admit served by the Trustee, should be excused. That is the sole reason why responses were not filed to the various pleadings and the Trustee's requests to admit.

11. Therefore, a justifiable reason exists for the Court to vacate all of the default orders that have been entered in this case. The failure to do so would result in severe prejudice to the Defendant here.

12. Revocation of the final orders here is also justified pursuant to FRCP 60(b). Under that Rule, excusable neglect is a recognized ground for that relief. FRCP 60(b)(1). Bankruptcy Rule 9024 provides that Rule 60 applies in bankruptcy.

13. If the Court requires detailed information and proof relative to Mrs. McMahan's myriad health issues, a hearing is hereby requested where medical records can be produced to establish cause for overturning this Court's entered orders and for a finding of no inexcusable neglect on her part. If the Court sets such a hearing, it is asked to stay enforcement of all rulings pending the results of the hearing.

14. Further, the Defendant has meritorious legal arguments and defenses to the Trustee's motion for summary judgment as well as other motions, which have not yet been presented to this Court or considered. Instead, the adversarial cases have proceeded solely on a default basis and the summary judgment and other orders were entered without any defense at all having been presented.

15. As such, the default rulings should be vacated so that the Defendant has an opportunity to be heard and rulings can be entered on the merits of the case rather than because of the lack of

a response. This is an urgent matter as an eviction order has been entered as well as an order to sell the real property, at issue.

16. Once the default rulings are vacated, the Court is asked to dismiss the adversarial complaint on statute of limitations grounds.

17. The adversarial complaint in this case was filed on April 30, 2020 (Doc. No. 1). Therein, it is alleged that title to the real property, located at 348 Red Draw, Edwards, Colorado, was acquired on October 18, 2010, with title placed into joint tenancy (*Id.*, ¶ 14).

18. Then, it is alleged that title was transferred on December 29, 2013 from joint tenancy by quit claim deed to Trinity Green–Colorado, LLC in what is being called, without any legitimate basis, a fraudulent transfer (*Id.*, ¶ 15).

19. The 2013 transaction is being deemed a fraudulent transfer by the Trustee because it was for one dollar ($1.00) and was without consideration (*Id.*).

20. There are two significant problems, however, with the Trustee's complaint and fraudulent transfer arguments.

21. First, the alleged fraudulent conveyance, the sole subject of the adversarial complaint is time-barred and unequivocally stale, because it contests the validity of a transfer that occurred in 2013, nearly seven years prior to the filing of the adversarial complaint, in 2020.

22. Second, there are legitimate reasons why title was transferred to the entity in 2013. In other words, there is a meritorious defense to the claims of wrongdoing. At a minimum, there are fact issues which are sufficient to overcome the summary judgment ruling.

23. With respect to timeliness, there is no question that the purported fraudulent transfer occurred outside of the limitations period. Section 548 of the Bankruptcy Code allows a bankruptcy

trustee to avoid a fraudulent transfer that occurred within two years of the filing of the subject case unless State law provides for a longer statute of limitations. That Section provides, in pertinent part, as follows:

(a)

(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

    (A)    made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

    (B)

        (i)    received less than a reasonably equivalent value in exchange for such transfer or obligation; and

        (ii)

(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

24. Here, there is no timely way for the Trustee to attack the December 29, 2013 property

transfer via his April 30, 2020 adversarial complaint filing. That is well outside of the two year limitations period codified in Section 548 of the Bankrupcty Code. Thus, the only manner in which the Trustee's lawsuit could be deemed timely, per Section 548, would be if the Trustee's complaint is timely and within the limitations period of the Illinois Uniform Fraudulent Transfer Act (UFTA), codified at 740 ILCS 160/1, *et seq*.

25. However, the UFTA fails to save the Trustee's claim here. The statute of limitations contained in the UFTA is four years. 740 ILCS 160/5, 160/10; *Reinbold v. Morton Community Bank (In re Mid-Illini Hardwoods, LLC)*, 576 B.R. 598, 604 (Bankr. C.D. Ill 2017); *see Zimmerman v. Paulsen*, 524 F. Supp. 2d 1077 (N.D. Ill. 2007).

26. Thus, it is clear that the Trustee's 2020 lawsuit was untimely and well beyond the four year limitations period to contest the 2013 transfer here. There is nothing in the record that would change that result. For that compelling reason, the adversarial complaint should be dismissed on limitations grounds.

27. Moreover, the facts would defeat the Trustee's claims if this case is reinstated and allowed to proceed. The same result would be achieved if Mrs. McMahan is allowed to respond to the Trustee's summary judgment motion. At a minimum, fact issues exist precluding summary judgment.

28. The mere transfer of title from joint tenancy, alone and without any proof of nefarious intent, is insufficient alone to void that transfer. Such a transfer is fully capable of innocent construction and not the fraudulent ones wrongfully ascribed by the Trustee.

29. As a practicing physician, it would have been not only smart but important for Dr. McMahan to remove his name from assets. After all, medical malpractice lawsuits are

commonplace. It would behoove any physician to protect himself and his family from creditors and judgments.

30. Estate planning is an important consideration and tool for any practicing physician which further justifies transferring title to assets including real estate.

31. Moreover, the property was purchased as investment property for Lynn. She performed the work on the property, put her own money into the project and it was appropriately quit-claimed into her entity, which she solely controlled, once the work was completed.

32. Next, the Trustee has not proven the allegations presented in the Complaint concluding that Dr. McMahan was insolvent at the time of the 2014 title transfer or that his debts were not being paid (Doc. No. 1, ¶¶ 16-18). No proof of those purported facts was presented to the Court.

33. Absent proof, there is no basis at all for the relief sought in the adversarial complaint granted via the default summary judgment proceedings.

34. Instead, the summary judgment and other rulings made in this case were based solely on the fact that Mrs. McMahan did not answer requests to admit allegedly served in this case. However, as detailed *supra*, Mrs. McMahan has suffered from significant health issues over the last few years. Her failure to answer the requests to admit were therefor excusable and not based on neglect. Moreover, Mrs. McMahan denies having ever received the documents. No evidence has been produced to establish that the requests to admit and motions were properly served.

35. The Federal Rules of Civil Procedure dictate that cases should be decided on their merits and not on technical deficiencies. Rule 36(b), itself, permits a court to withdraw default admissions in order to "promote the presentation of the merits of the action."

36. Plaintiff's requests to admit were used improperly in his motion for summary judgment

to establish legal conclusions. That, he cannot do. Under well-recognized law, requests for admission cannot be used to establish a legal conclusion. *Katzman v. United States*, 2012 WL 601771, at *1 (N.D. Ill. Feb. 23, 2012). Nor can they be used to establish facts that are obviously in dispute. See, *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057 (S.D.Cal.1999) ("Requests for admissions cannot be used to compel an admission of a conclusion of law."); *Kosta v. Connolly*, 709 F. Supp. 592, 594 (E.D.Pa.1989)(suggesting that Rule 36 should not be employed to establish facts that are obviously in dispute)

37. The Trustee's exclusive reliance on purported admissions from the unanswered requests to admit is evident via a review of its memorandum of law in support of the motion for summary judgment (Doc. No. 55). For example, replete throughout that document, the Trustee references that certain facts are admitted by the failure to answer the requests to admit. He further concludes that there are no issues of material fact (relying on the purported admissions), as follows: "As further discussed in the Statement of Material Facts submitted with this Memorandum in Support of the Trustee's Motion for Summary Judgment and the Trustee's Motion for Summary Judgment, with the exception of real property valuation, Defendants have admitted all material facts in this case." (Doc. No. 55, p. 4.)

38. No other basis nor evidence is presented in the motion for summary judgment other than the default admissions. It would be a miscarriage of justice if the default admissions were allowed to stand and form the sole basis for the relief requested in the three adversarial cases. That would cause the Defendants to lose their properties without due process of law. The Court is asked to avoid that injustice by allowing Defendants to withdraw the default admissions, grant leave to respond to the requests to admit and allow the case to proceed (assuming that the limitations motion

is denied).

39. No evidence has been presented in furtherance of the Trustee's legal conclusion that the title transfer was made with the intent to hinder, delay or defraud creditors. As such, it would be severely unfair and prejudicial to allow the default rulings to stand unchallenged.

40. In conclusion, justice requires that Defendant be allowed to participate in this litigation and for the default rulings to be vacated. It would be highly inequitable and unjust to allow the default rulings to stand in light of the health challenges faced by Mrs. McMahan. As such, the case should be allowed to proceed. The statute of limitations for purported fraudulent transfers bars the Trustee's claims because they are untimely. Moreover, there is no support in the record for concluding that the transfers were improper once the default admissions are withdrawn. Further, there are perfectly innocent reasons for the property transfers which have not been considered. When they are, there is no basis in law or fact to avoid the transfers.

41. For all of these reasons, the Court is asked to enter the relief requested in this motion and stop a catastrophic wrong from being inflicted here in this case.

WHEREFORE, for the reasons contained in this motion, the Defendant, Trinity Green–Colorado, LLC, hereby requests that leave be granted for Robert J. Shelist to file his appearance instanter, that the Court's substantive rulings in this case and default admissions be vacated, that the case be dismissed on statute of limitations grounds and/or that the case be reinstated for further proceedings.  In the alternative, the Court is asked to set a hearing on Lynn McMahan's health issues and whether her condition justifies vacating the Court's orders in this case and allowing the case to proceed on the merits.  Should that be the Court's ruling, the Court is asked to stay all entered orders pending the hearing, including the eviction and sales orders for the property.  In the event that the Court declines to grant any aspect of the motion, Defendant asks this Court to stay the enforcement of its default orders pending an appeal.

Dated:  October 5, 2022

        Respectfully submitted,

        TRINITY GREEN, LLC, TRINITY GREEN,
        LLC– 1240 N. DAMEN, TRINITY GREEN,
        LLC – 509 PEYTON and TRINITY GREEN –
        COLORADO, LLC

        /s/ Robert J. Shelist

        By:_____
            Robert J. Shelist

Robert J. Shelist
Law Offices of Robert J. Shelist, P.C.
205 N. Michigan Avenue
Suite 810
Chicago, Illinois 60601
(312) 226-0675

## CERTIFICATE OF SERVICE

    I, Robert J. Shelist, certify that on October 5, 2022 I caused to be filed the foregoing document with the Clerk of the Court via the CM/ECF system. I further certify that I caused to be served a true and accurate copy of the foregoing document upon counsel of record in this case, by electronic mail.

    Respectfully submitted,

    /s/ Robert J. Shelist

    By:_____
        Robert J. Shelist

Robert J. Shelist
Law Offices of Robert J. Shelist, P.C.
205 N. Michigan Avenue
Suite 810
Chicago, Illinois 60601
(312) 226-0675

# EXHIBIT A

TNC-Neurology Center | 1830 Blake Avenue Suite 101 | GLENWOOD SPRINGS, CO 81601-4261

Lynn  McMahan                                      66yo F | ▬ | ▬

# NEUROLOGY CENTER

 VALLEY VIEW

Date: 09/28/2022
RE: Lynn McMahan, DOB: ▬, PT ID ▬

To Whom It May Concern:

Lynn McMahan is a patient of mine being seen for a serious neurologic condition that will cause permanent vision loss if left untreated. For this reason, it is imperative that she attend urgent medical appointments, including some at the Mayo Clinic in Minnesota. Please understand that these appointments cannot be delayed or rescheduled.

Please contact my office at (970) 384-7144 with any questions.

Sincerely,

*[signature]* MD

JEFFREY THORNTON, MD
Board Certified Neurologist